**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5194

YVONNE RENE LEIGH,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-94-406)

Argued: November 2, 1995

Decided: March 6, 1996

Before RUSSELL and WIDENER, Circuit Judges, and MICHAEL,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Melanie Carstairs Eyre, Fairfax, Virginia, for Appellant.
Leslie Bonner McClendon, Assistant United States Attorney, Alexan-
dria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United
States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Yvonne Leigh was convicted of both importing a controlled substance into the United States' customs territory in violation of 21 U.S.C. § 952(a) and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). She appeals her convictions and sentence on four grounds. First, she argues that the district court erred in denying her motion in limine to exclude the expert testimony of a United States Custom Service Agent. Second, she argues that the district court erred in admitting into evidence the written report of a Government witness. Third, she contends that there was insufficient evidence to sustain her conviction. And fourth, she alleges that the district court erred in denying her motion that she be sentenced pursuant to the United States Sentencing Guidelines § 5C1.2. After reviewing each of her arguments, we affirm her convictions and sentence.

I.

When six suitcases remained unclaimed following a flight from Amsterdam to Dulles International Airport in Washington D.C., they were placed in the custody of U.S. Customs Inspectors. Upon examining the bags' exteriors, an inspector noticed an unusually thick bulge on the bottom of four of the bags. Because the luggage was unclaimed, an airline representative opened one of the bags. As the inspector excised the bulge from the opened suitcase's back wall, a strange odor emanated from a concealed, board-like insert. The insert contained a white powdery substance, which field-tested positive for heroin. Similar packages found in four of the six luggage pieces yielded approximately three kilograms of heroin mixture with a minimum wholesale value of $500,000.

Three days later, Yvonne Rene Leigh ("Leigh") arrived at Dulles seeking the luggage. Leigh had just flown in from Sierra Leone with

2

her two nieces. Although Leigh held all six claim tickets to the luggage, her nieces picked up the two bags that did not contain the heroin. Customs Agents apprehended Leigh when she attempted to leave the customs territory with the heroin-filled bags.

After waiving her Miranda rights and during her interrogation by U.S. Custom Agents, Leigh claimed that her nieces"had nothing to do with it," that "they know nothing" and that "if there are problems, the whole thing should fall on me." Leigh also told the investigators that her boyfriend of several years paid for the trip because she was visiting his family in Sierra Leone, and that it was his brother who allegedly gave her the heroin-filled luggage and instructed her to take the bags back to the United States. The boyfriend, however, was never located, and witnesses testified that her boyfriend did not have family in Sierra Leone.**1** Leigh also testified that she travelled infrequently--blatantly contradicting her travel records and passport, which revealed she had made at least nine trips to West Africa since 1992. It was also suspicious that Leigh made such frequent and expensive trips abroad despite that her sole source of income was public assistance.

The sentencing judge noted that Leigh's base offense level was 32 and that she had a category I criminal history, resulting in a range of 97 to 121 months. But the sentencing judge also noted that her § 841 conviction had a statutory mandatory minimum of one-hundred twenty (120) months. Consequently, the trial judge sentenced Leigh to concurrent sentences of one-hundred twenty (120) months on each count.

II.

A.

Leigh contends that her ability to prepare her defense was prejudiced because the district court erred in denying her motion in limine by permitting a customs agent to testify for the Government as an

_____

**1** The Government was very interested in locating Leigh's boyfriend because he was a well-known and much sought-after leader of an international heroin trafficking organization.

expert on heroin smuggling and trafficking into the eastern United States. Leigh contends that the district court should have barred the expert's testimony because the Government disclosed the expert's identity and substance of his testimony within twenty-four hours of trial thus violating paragraph five of the pretrial discovery order. When reviewing a district court's ruling on an evidentiary motion, this court inquires whether the district court abused its discretion. United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993), cert. denied, 62 U.S.L.W. 3640 (U.S. 1994). We hold the district court did not abuse its discretion.

Paragraph five of the pretrial discovery order contained the following direction:

> The Government shall disclose to the defendant a written summary of testimony the Government intends to use under Rules 702, 703, or 705, Federal Rules of Evidence, during its case in chief at trial. This summary shall describe the witnesses' opinions, the bases and reasons therefor, and the witnesses' qualifications.

No time requirement was stated. Following a hearing on defense counsel's motion in limine to preclude the expert's testimony, the district court ruled the testimony admissible provided that it was confined to:

> [w]hat heroin is and where it comes from, whether a quantity is distributable or for personal use, that West Africa is a frequent point of departure for heroin importation into the East Coast of the United States . . . the [wholesale prices] it would command . . . the acquisition of heroin in West Africa . . . the sale price of that heroin in the United States . . . the methods of smuggling, and the different methods that are used by persons who have been arrested in the eastern part of the United States.

The district court did not permit the expert to testify that numerous trips to West Africa are indicia of criminal drug trafficking.

4

Leigh contends that the Government violated the pretrial discovery order and that the district court erroneously permitted the expert to testify. To support her contention, Leigh cites this court's decision in United States v. Seeright, 978 F.2d 842 (4th Cir. 1992). We believe, however, that Leigh's reliance on Seeright is misplaced. In Seeright, we upheld the district court's refusal to permit the defendant from calling two witnesses to the stand when Seeright disclosed the witnesses' identities to the Government three days before trial. Although the parties were not bound by a pretrial discovery order, the defense was bound by Fed.R.Crim.P. 12.3(a)(2) to disclose, upon the Government's request, all witnesses testifying on a public authority defense. Thus, the error admonished in Seeright was the defendant's untimely disclosure of the existence of certain witnesses; Leigh's case involves the untimely disclosure of the substance of the witness' testimony.

The evidence of record reveals that, in accordance with the pretrial discovery order, the Government notified defense counsel of the expert's identity, qualifications, and area of expertise one week before trial, when the Government filed the expert's resume as one of the trial exhibits. The fact that Leigh's trial counsel learned the substance of the expert's testimony only within twenty-four hours of trial did not thwart her ability to prepare rebuttal evidence. Leigh knew the charges leveled against her. Upon receipt of the expert's resume, she could have contacted the expert and interviewed him regarding his proposed trial testimony. Furthermore, the defense could have also proffered its own narcotics trafficking expert to rebut the Government's expert. Thus, we find no merit in Leigh's claim that she was prejudiced in preparing her defense. Consequently, we hold that the district court did not abuse its discretion in permitting the Government's expert to testify.

B.

Next, Leigh contends the district court erroneously admitted prejudicial and damaging information into evidence when it permitted the Government to admit the entire written report of Customs Senior Special Agent Phillip Reed ("Reed") under Federal Rule of Evidence 801(d)(1)(B). We review the district court's evidentiary decisions for abuse of discretion. United States v. Hassan El , 5 F.3d 726, 731 (4th Cir. 1993), cert. denied, 62 U.S.L.W. 3640 (U.S. 1994).

5

In its case-in-chief the Government introduced Reed's testimony regarding his interview of Leigh on the night of her arrest. Prior to trial, defense counsel received Reed's full report of investigation. Consequently, during cross-examination defense counsel attempted to impeach Reed by pointing out that certain facts to which he testified on direct were not contained in his report of investigation. Specifically, defense counsel focused on Reed's account of Leigh's comments concerning her nieces. Defense counsel pointed out that Reed's report noted that Leigh had said that her nieces"had nothing to do with it," while his trial testimony recounted that Leigh had said "they don't know anything about it." On redirect, the Government sought to introduce Reed's entire three page report into evidence, based on defense counsel's attempted impeachment. Over defense counsel's objection, the district court admitted the entire report.

Leigh contends that the admission of the entire written report was error and was damaging to Leigh. We find that the full report was properly admitted as a prior consistent statement. Rule 801(d)(1)(B) specifically permits the proffering of prior consistent statements to rebut a charge of recent fabrication. We maintain that the trial court has full discretion over the extent to which prior consistent statements are admitted. United States v. De Vore, 423 F.2d 1069, 1073 (4th Cir. 1970), cert. denied, 402 U.S. 950 (1971). In the instant case, the district court, having heard both the Government's argument for admitting the statement into evidence and the defense's objections to its admission, made the decision to admit the report. The decision to admit the report was clearly within the discretion of the trial court. See United States v. Parodi, 703 F.2d 768, 774-775 (4th Cir. 1983) (prior consistent statements properly admitted by trial court); United States v. Dominguez, 604 F.2d 304, 311 (4th Cir. 1979) (trial court properly admitted prior consistent statements of Government witness pursuant to Fed. R. Evid. 801(d)(1)(B) after witness' credibility was challenged), cert. denied, 444 U.S. 1014 (1980).

Leigh further contends that the district court impermissibly allowed the entire report to be admitted into evidence because many of the statements in the report were never even the subject of Agent Reed's direct testimony at trial. The "Doctrine of Completeness," however, is an equitable remedy employed by the court when fairness dictates that the remainder of the report be received so that the jury will not

6

be misled by those segments of the prior statement used on cross-examination. United States v. Rubin, 609 F.2d 51, 63 (2d Cir. 1979). The Supreme Court has emphasized that the doctrine is important "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completion is ipso facto relevant and therefore admissible. . . ." Rainey v. Beech Aircraft Corporation, 488 U.S. 153, 172 (1988).

In the instant case, defense counsel referenced Reed's report several times, specifically challenging semantic discrepancies between Reed's report and his trial testimony. But the record reveals that while attempting to impeach Reed, defense counsel confused herself when referencing between Reed's report and his testimony. We believe this situation necessitated that the district court rely on the Doctrine of Completeness to resolve any confusion among the jurors. Accordingly, we hold that the district court did not abuse its discretion in permitting Reed's entire written statement into evidence.

C.

Next, Leigh contends that the district court should not have denied her motion for judgment of acquittal. She believes that there was insufficient trial evidence to establish that she knew that heroin was present in her luggage. When reviewing the denial of a motion for judgment of acquittal, this court must affirm the jury's verdict unless no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Johnson, 659 F.2d 415, 419 (4th Cir. 1981). We view the evidence in the light most favorable to the verdict, giving the Government all reasonable inferences as to the existence of proof on the disputed element. See id.; United States v. Zandi, 769 F.2d 229, 235 (4th Cir. 1985).

Determining whether or not sufficient evidence exists to convict is a fact-specific inquiry which the fact-finder should make after resolving conflicts in witness' testimony, assessing their credibility, and weighing all the evidence before it. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984), cert. denied, 469 U.S. 1217 (1985). At trial, the Government presented the following evidence:

(1) that Leigh's trip to Sierra Leone, where she acquired the heroin filled luggage, was one of at least nine trips she had taken to West Africa in less than five years;

(2) that Leigh received public assistance and received substantial cash gifts from her West African boyfriend;

(3) that her West African boyfriend financed her trips so that she could allegedly bring presents to his relatives;

(4) that her boyfriend provided enough money so that a relative of Leigh's could travel with her;

(5) that said boyfriend had suspiciously not surfaced since her arrest;

(6) that Leigh received the suitcases under suspicious circumstances-allegedly from her boyfriend's relative, who in turn allegedly instructed her to take those specific suitcases back to the United States with her;

(7) that after Leigh accepted the heroin-filled suitcases from her boyfriend's relative, she gave him her suitcases in return;

(8) that the four heroin-filled suitcases each had a noticeable bulge;

(9) that Leigh made the following statements to U.S. customs agents when she was apprehended "If there are any problems, my nieces, my nieces don't know anything about it. If anybody's going to get in trouble, let it all fall on me"; and

(10) that Leigh was considered the most successful courier in the Nigerian based heroin smuggling organization run by her boyfriend.

Although some of the evidence of record is circumstantial, we believe that when viewed in the light most favorable to the Government, it

8

was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Leigh knew or was at least willfully blind to her transporting heroin in her luggage.

Actual knowledge is not always essential for securing a conviction on an importation count; it is sufficient to show that the defendant was willfully blind to the contents of her belongings. A defendant is willfully blind when she purposefully and deliberately contrives to avoid learning all the facts. United States v. Campbell, 977 F.2d 854, 857 (4th Cir. 1992). Albeit, in Leigh's case, the Government had no direct evidence that Leigh had actual knowledge of the heroin, but the evidence was particularly compelling that at a minimum Leigh should have known the suitcases contained heroin. Trial testimony revealed Leigh to be a highly successful narcotics courier. Additionally, Leigh demonstrated a deliberate ignorance as to the source of her boyfriend's money, how he acquired the large sums of cash he used in financing her West African trips, and what he actually did for a living. There was overwhelming evidence to support the jury's finding that Leigh was willfully blind to her boyfriend's drug trafficking and her role therein. In sum, we hold that the district court did not err in denying Leigh's motion for acquittal.

D.

Finally, Leigh contends that the district court should have sentenced her within the guidelines range, pursuant to 18 U.S.C. § 3553(f),[2] which requires the district court to ignore the applicable statutory mandatory minimums if the defendant meets all five of the following criteria:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

---

[2] We note that Leigh assigns error under § 3553(f)'s companion Guideline provision § 5C1.2 and references both sections interchangeably. For purposes of uniformity and clarity, we cite only the statutory provision § 3553(f).

9

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor or others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; _and_

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f) (emphasis added). Section 3553(f), was enacted as a "safety-valve" provision so that less culpable offenders of 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, might receive lighter sentences reflecting certain mitigating factors, which ordinarily would be disregarded by the mechanistic application of mandatory minimums. H.R. Rep. No. 460, 103d Cong., 2d Sess., (1994), 1994 WL 107571 (1994). Section 3553(f) expressly precludes the sentencing court from disregarding the mandatory minimum sentence of 21 U.S.C. § 841 if the sentencing court finds that the defendant fails to meet even one of the five criteria. The district court, finding that Leigh failed to meet the fifth requirement, refused to sentence her below the mandatory minimum of one-hundred twenty months. Leigh contends that, contrary to the district court's finding, she met § 3553(f)'s fifth requirement.

10

Generally, we are adamant in our position that absent the district court's mistaken belief that it lacked the authority to depart from the guidelines, we will not review the factual findings underlying its refusal to depart. See United States v. Underwood, 970 F.2d 1136, 1338 (4th Cir. 1992); United States v. Bayerle , 898 F.2d 28, 30 (4th Cir.), cert. denied, 498 U.S. 819 (1990). Yet, it is unclear to us whether the principle of non-review announced in Underwood and Bayerle applies to a district court's decision not to sentence below the statutory mandatory minimum pursuant to 18 U.S.C.§ 3553(f). We proceed, nonetheless, to the merits of Leigh's claim because it is evident that she was not entitled to the relief sought.

Section 3553(f)(5), in particular, requires the defendant to truthfully disclose all information regarding his offense or conviction as well as the acts of co-conspirators when the offense is a conspiracy or joint activity. United States v. Acosta-Olivas, 71 F.3d 375, 378 (10th Cir. 1995). Whether a defendant, therefore, has truthfully provided the Government with all of the information and evidence known to him regarding the offense or offenses that were part of the same course of conduct or of a common scheme or plan is a question of fact that we review for clear error. See, United States v. Rodriguez, 69 F.3d 136, 144 (1995) (holding the district court's determination that a defendant is ineligible for a [§ 3553 (f)] reduction, ought to be governed by the clearly erroneous standard). To determine whether a defendant has cooperated completely and truthfully with the government, the sentencing court must collectively assess all statements the defendant made to the government--whether they be truthful statements, partial statements, false statements, or omissions. Above all, the sentencing court must determine whether the defendant failed to provide all information likely to be in her possession.

When denying Leigh's motion to be sentenced pursuant to § 3553(f), the district court focused on Leigh's credibility and truthfulness in divulging information. In so doing, it evaluated Leigh's capacity for cooperating with the government as well as her demeanor during trial. The evidence of record reveals that despite her protestations otherwise, Leigh failed to thoroughly cooperate during her lengthy interview with government agents. Leigh continued to provide false testimony about her numerous trips to West Africa and her prior conviction for lying to a police officer. She persisted in denying

11

her involvement in the heroin trafficking organization. And she failed to provide any detailed information regarding her co-conspirators--in particular, information regarding the whereabouts of her boyfriend and his role in the smuggling organization. During sentencing the district court specifically stated:

> that [Leigh's] statement that she didn't know what was in the suitcase was unbelievable at trial. And the jury probably didn't believe it. Given the circumstances of the offense and her behavior at Customs, I -- I mean I thought her testimony was unbelievable. I believe the jury found that too, or they would not have convicted her. And I'm not sure that truthful answers wouldn't be of more assistance to the Government than her maintenance of her position.

Thus, having viewed Leigh's testimony and demeanor at trial, having heard the extent to which she failed to cooperate with the government, and having known of her past history, the district court was in the best position to make the factual determination that Leigh did not meet § 3553(f)'s fifth requirement. We do not find that the district court clearly erred in its refusal to sentence Leigh according to § 3553(f).

III.

For the foregoing reasons, Leigh's conviction and sentence are

AFFIRMED.

12